# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**TERRY DILORETO,**

        **Plaintiff,**

    **v.**

                                      **Civil Action 2:20-cv-2385**
                                        **Judge James L. Graham**
                                        **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Terry Diloreto ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Period of Disability and Disability Insurance benefits.  This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 13).  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.      BACKGROUND

Plaintiff filed his application for Title II Social Security Benefits on January 3, 2017, alleging that he had been disabled since May 1, 2016.  (R. at 160.)  On February 4, 2019, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Jason Mastrangelo (the "ALJ") held a hearing.  (*Id.* at 29–51.)

Plaintiff, represented by counsel, appeared and testified. (*Id.*) Vocational expert Michael Laraia (the "VE") also appeared and testified at the hearing. (*Id.*) On February 20, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 9–28.) On March 10, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors (ECF No. 14), Plaintiff's sole contention of error is that the ALJ failed to properly evaluate the opinions of Kristen Haskins, Psy.D., the state agency psychologist.

## II.     ALJ'S DECISION

On February 20, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9–28.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

since May 1, 2016, his application date.  (*Id.* at 14.)  At step two, the ALJ found that Plaintiff had the severe impairments of chronic respiratory disorder, ischemic heart disease with an acute myocardial infarction, obesity, asthma, a disorder of major joint, a trauma-related disorder, and a neurodevelopmental disorder.  (*Id.* at 14–15.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 15–16.)  At step four of the sequential process, the ALJ set forth Plaintiff's mental residual functional capacity ("RFC")[2] as follows:

> The claimant can maintain attention, concentration, persistence, and pace sufficient to understand and carry out simple tasks and instructions.  He cannot perform time-pressured tasks such that he is limited to goal-oriented work without time sensitive strict production quotas.  He can tolerate simple, routine changes in a work setting. He is limited to simple, routine work-related decision-making.

(*Id.* at 16.)  At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy.  (*Id.* at 23–24.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.* at 24.)

### III.    RELEVENT RECORD EVIDENCE

Plaintiff's sole contention of error relates to the ALJ's consideration of the state agency psychologist's opinion.  Accordingly, the undersigned will focus her review of the medical evidence on Plaintiff's alleged mental limitations.

### A.    State Agency Reviewers

At the initial determination, no state agency reviewer opined that Plaintiff had nonexertional RFC limitations.  (R. at 53–60.)  At the reconsideration level, on April 27, 2017,

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations."  20 C.F.R. § 4040.1545(a)(1).

state agency reviewer Kristen Haskins, Psy. D. reviewed file and offered an opinion regarding Plaintiff's mental RFC. (*Id.* at 62–81.) As it related to "his understanding and memory limitations," Dr. Haskins found that Plaintiff had no significant limitations in his ability to remember locations and work-like procedures or in his ability to remember short and simple instructions. In contrast, Dr. Haskins opined that Plaintiff was "[m]oderately limited" in his ability to understand and remember *detailed* instructions, but that he remained capable of performing "simple, repetitive instructions" and "[w]ould learn best [with] hands on training." (*Id.* at 77 (emphasis added).)

As it related to his "sustained concentration and persistence limitations," Dr. Haskins similarly opined that Plaintiff was not significantly limited in his ability to carry out short and simple instructions. (*Id.*) Dr. Haskins again opined that Plaintiff would have moderate limitations in carrying out detailed instructions and sustaining an ordinary routine without special supervision, but again opined that he remained capable of performing "simple, repetitive instructions" and that he could "complete short cycle tasks." (*Id*. at 78.) She further opined that Plaintiff would need special supervision when learning new tasks and would learn best with hands-on training. (*Id.*)

With respect to Plaintiff's adaptive limitations, Dr. Haskins opined that Plaintiff "would perform best [with] routine job duties in settings [with] few changes," adding that Plaintiff had ability to handle tasks without strict time limitations or production standards.

### B.      Plaintiff's Testimony and Reports

At the hearing, Plaintiff testified that he had completed twelfth grade. (R. at 35.) He also testified that he could drive without difficulty. (*Id.*) Plaintiff did not offer any other testimony related to his mental health. (*Id.* at 30–51.) In his disability reports, Plaintiff did not list any mental health or intellectual conditions. (*Id.*)

## C.    Medical Records

On January 6, 2014, Plaintiff reported to his provider that he was having short-term memory problems, but otherwise denied any psychiatric issues.  (R. at 227–28.)  In August 2014, Plaintiff reported increased stress due to marital problems.  (*Id.* at 231.)  When he was admitted to the hospital in June 2016, Plaintiff reported that he had trouble with anxiety.  (*Id.* at 320.)  In a pre-operative report in February 2018, a provider listed "[n]oncompliant with anxiety disorder" among Plaintiff's diagnoses.  (*Id.* at 479.)  Throughout the record, however, his providers noted that his psychiatric and neurological behaviors were normal.  (*See e.g., id.* at 228, 254, 311, 399, 492.)

## D.    Consultative Examination

David Bousquet, M.Ed. completed a psychological consultative examination of Plaintiff on April 12, 2017.  (R. at 363–72.)  At the examination, Plaintiff reported receiving mental health treatment as a child, but that he had not received mental health treatment as an adult, nor had he ever taken psychotropic medication.  (*Id.* at 364.)  Plaintiff reported that he did not have trouble with his appetite, but did have difficulty sleeping.  (*Id.*)  He further reported that "sometimes he does become moody and describes being sad, anxious, and will occasionally become irritable."  (*Id.*)  Plaintiff reported some difficulty with his memory, but denied any issues with attention and concentration.  (*Id*. at 365.)  Dr. Bousquet noted that Plaintiff had "no indications of a formal thought disorder nor were there indications of delusional thinking."  (*Id.*)

Plaintiff reported that he had not had difficulty with anxiety or with interacting with coworkers when he was working.  (R. at 365.)  Plaintiff did, however, report difficulties with learning job assignments and he stated that "[m]ost of my jobs were hands on, I learn better that way."  (*Id.*)  In regard to his education, Plaintiff reported that he finished twelfth grade, but did not graduate high school or get a GED.  (*Id.* at 366.)  He also reported that "in school he was in

special education class for slow learners." (*Id.*)  Plaintiff reported that he had previously had problems with his use of alcohol, but that he had been sober for nine months preceding the consultative examination.  (*Id.* at 366–67.)  He denied ever using recreational drugs.  (*Id.*)

During the evaluation, Dr. Bousquet administered the WAIS-IV.  (R. at 367.)  Dr. Bousquet observed that Plaintiff had "a significant discrepancy between verbal comprehension and perceptual reasoning, between verbal comprehension and processing speed, and working memory and processing speed." (*Id.*)  Dr. Bousquet also administered the WRAT-IV.  (*Id.*)  He opined that the results of that test "are consistent with [Plaintiff's] reports that occasionally he does have some difficulty with basic reading." (*Id.*)

In his Functional Assessment, Dr. Bousquet opined as follows:

> The available information indicates to this examiner that there will be times when [Plaintiff] will have some problems with understanding job assignments and duties but once he learns them he would be able to carry them out and remember them . . . [,] he has the abilities to maintain attention and concentration and has the abilities to maintain acceptable persistence and pace in a work setting . . . [,] he has the abilities to conform to social expectations in a work setting . . . [, and] has the abilities to respond appropriately to work place stresses and pressures.

(R. at 369–70.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.      ANALYSIS

Plaintiff's sole contention of error is that the ALJ failed to properly evaluate the opinions of Kristen Haskins, Psy.D, the state agency reviewing psychologist. (Pl.'s Statement of Errors 5–9, ECF No. 14.) Plaintiff contends that, despite affording Dr. Haskins' opinion substantial weight, the ALJ failed to include limitations that reflect Dr. Haskins' opinions or adequately explain why he did not include such limitations in the RFC. (*Id.* at 6.) In particular, Plaintiff cites Dr. Haskins' opinions that Plaintiff "would need special supervision when learning new tasks and would learn best with hand-on training" and could "complete short cycle tasks" and that Plaintiff "would perform best [with] routine job duties in settings [with] few changes." (*Id.* 8-9 (citing R. at 78).) The undersigned agrees that the ALJ's failure to explain why he omitted

Dr. Haskins' opined limitations that Plaintiff requires special supervision when learning new tasks and that he is limited to short cycle tasks requires remand.[3]

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08-cv-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted).

_____

[3] The ALJ's failure address Dr. Haskins' statements that Plaintiff would work "best" with hands-on training and in an environment with routine job duties in setting with few changes, (*see* R. at 78), does not, however, require reversal. A claimant's RFC is an assessment of the "most" he or she can do despite his or her limitations, 20 C.F.R. § 4040.1545(a)(1), not a description of what environment would be the "best" fit. *See, e.g.*, *Yerian v. Comm'r*, No. 2:17-cv-562, 2018 WL 4357479, at *2 (S.D. Ohio Sept. 13, 2018) ("A statement that Plaintiff would work best in a particular environment is not equivalent to an opinion that he lacks the capacity to work in any other type of environment.").

When assessing the RFC, an ALJ need "only accept those limitations found credible."

*Womble v. Comm'r of Soc. Sec.,* No. 3:16-CV-00055, 2017 WL 480412, at *4 (S.D. Ohio Feb. 6,

2017) (quoting *Casey v. Sec. of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993)).

However, an "ALJ must meaningfully explain why certain limitations are not included in the

RFC determination, especially when such limitations are set forth in opinions the ALJ weighs

favorably." *Ryan v. Comm'r of Soc. Sec.,* 307 F. Supp. 3d 797, 803–04 (S.D. Ohio 2017), *report*

*and recommendation adopted,* No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017)

(citing cases). Thus, if an ALJ gives an opinion substantial weight but does not include all of the

limitations from that opinion into the RFC she must explain why she did not include those

opined limitations. *See Ward v. Comm'r of Soc. Sec.,* No. 3:19-CV-201, 2020 WL 1983080, at

*3 (S.D. Ohio Apr. 27, 2020) (finding reversable error where the ALJ gave an agency reviewer's

opinion "substantial weight," did not include all of the reviewers offered limitations in the RFC,

and failed to explain why he omitted those limitations.).

Here, notwithstanding the ALJ's assignment of "substantial" weight and determination

that Dr. Haskins' opinions are "are consistent with the record as a whole," he failed to explain

why he omitted the limitations she opined, namely, that Plaintiff requires special supervision

when learning new tasks and that he is limited to short cycle tasks. To be sure, the ALJ was not

required to adopt verbatim the reviewers' findings even though he determined that they were

persuasive. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even

where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a

state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency

psychologist's limitations wholesale."). But where, as is the case here, an ALJ determines that

an opinion or finding is persuasive, the ALJ must incorporate the limitations in that opinion or

finding or provide an adequate explanation for declining to do so. *See, e.g.*, *Queen v. Comm'r of Soc. Sec.*, No. 2:16–cv–1082, 2017 WL 6523296, at *9–10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission). An ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports the ALJ's decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record'") (quoting 5 U.S.C. § 557(c)(3)(A)); *Allen v. Astrue*, No. 5:11–cv–95, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); *Cote v. Colvin*, No. 16–cv–57, 2017 WL 448617, at *7 (W.D. Wisc. Feb. 2, 2017) ("On remand, the ALJ must build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment."). Such is the case here.

The Commissioner's contention that the RFC assessed was "consistent with" Dr. Haskins' opinions is unavailing. (*See* Mem. in Opp'n 6-7, ECF No. 16 at PAGEID # 629-30.) Because the RFC makes no mention of any level of specialized supervision needed, the undersigned cannot conclude that it is consistent with Dr. Haskins' opinion that Plaintiff required

"special supervision when learning new tasks." (*Compare* ALJ's RFC, R. at 16, *with* Dr. Haskins' Opinion, R. at 78.); *See also Collins v. Comm'r of Soc. Sec.*, No. 2:17-cv-1028, 2019 WL 1512539, at *5 (S.D. Ohio Apr. 8, 2019) *report and recommendation adopted*, 2019 WL 1858823 (S.D. Ohio Apr. 25, 2019) (finding that ALJ erred by failing to explain why an "over-the-shoulder limitation" opined by state agency psychologists was omitted from RFC assessment even though their opinions were given great weight).

Nor is the RFC consistent with Dr. Haskins' opinion that Plaintiff requires short cycle tasks. Although Dr. Haskins neglected to define "short cycle tasks," courts evaluating this terminology within the Social Security context have found "short cycle" to mean "simple and repetitive." *See, e.g.*, *Stover v. Saul*, No. 2019 WL 4127320, at * 6 (M.D. Penn. Aug. 2, 2019) ("The Court finds "short cycle" to mean "simple and repetitive" is an interpretation supported by the above cited sources.") (citing The Dictionary of Occupational Titles; The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO); The Department of Labor's 1991 Revised Handbook for Analyzing Jobs; *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 614–15 (E.D. Tex. 2009); and *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004)). The undersigned cannot conclude that the RFC the ALJ assessed is consistent with a limitation to "short cycle tasks" because it does not limit Plaintiff to performing repetitive tasks.

In summary, remand is required because the ALJ failed to explain why he omitted limitations Dr. Haskins opined even though he accorded those opinions "substantial" weight and found them to be "consistent with the record as a whole."

## VI.    DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g).

Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE